# Illinois Official Reports

## Appellate Court

*Hoffman v. Madigan*, 2017 IL App (4th) 160392

| | |
|---|---|
| Appellate Court Caption | MICHAEL L. HOFFMAN, in His Official Capacity as Acting Director of Central Management Services, Plaintiff-Appellant, v. LISA MADIGAN, in Her Official Capacity as Attorney General of the State of Illinois, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-16-0392 |
| Filed | June 22, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 15-MR-1050; the Hon. John M. Madonia, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael W. Basil and Ryan C. Green, of Illinois Department of Central Management Services, and Dennis D. Murashko, of JRTC, both of Chicago, and Lorilea Buerkett, of Brown, Hay & Stephens, LLP, of Springfield, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of counsel), for appellee. |

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.
Justices Appleton and Knecht concurred in the judgment and opinion.


**OPINION**

¶ 1 In November 2015, plaintiff Tom L. Tyrrell, in his official capacity as Director of Central Management Services (CMS), filed a complaint for injunctive and declaratory relief. Following Tyrrell's resignation, Michael Hoffman, in his official capacity as Acting Director of CMS, was substituted as plaintiff. Throughout the proceedings below, Hoffman and CMS were referred to collectively as "CMS," and we do the same. The complaint, in part, requested (1) defendant, Lisa Madigan, in her official capacity as Attorney General of the State of Illinois, be enjoined from representing CMS before the Workers' Compensation Commission (Commission) on cases involving "personal assistants," based on her refusal to defend CMS's determination that a personal assistant was not a State employee for purposes of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2014)), and (2) a special assistant Attorney General be appointed to represent CMS. That same month, the Attorney General filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)), alleging the complaint failed to state a legally valid cause of action. In May 2016, the trial court granted the motion to dismiss with prejudice.

¶ 2 CMS appeals, arguing the trial court erred by dismissing its complaint for failure to state a cause of action. We affirm.


¶ 3                  I. BACKGROUND

¶ 4          A. Disabled Persons Rehabilitation Act

¶ 5 The Disabled Persons Rehabilitation Act (Rehabilitation Act) (20 ILCS 2405/1 *et seq.* (West 2014)) provides for the "rehabilitation, habilitation[,] and other services to persons with one or more disabilities." The Rehabilitation Act gives the Department of Human Services (DHS) the power to establish programs designed "to prevent unnecessary or premature institutionalization" of persons with disabilities. 20 ILCS 2405/3(f) (West 2014)). One such program utilizes "personal assistants" to provide care and assistance to disabled people in their own homes. DHS regulations designate a disabled person receiving care as (1) the "customer" and (2) the "employer" of the personal assistant. 89 Ill. Adm. Code 676.30(b)(3) (2014). Solely for the purposes of coverage under the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2014)), the Rehabilitation Act designates these personal assistants as public employees. The amendment providing for this employee/employer relationship allowed personal assistants to collectively bargain with DHS to set the level of pay for personal assistants. The Rehabilitation Act specifically provides the State "shall not be considered to be the employer of *** personal assistants *** for any purposes not specifically provided in Public Act 93-204 or Public Act 97-1158, including but not limited to, purposes of vicarious liability in tort and purposes of statutory retirement or health insurance benefits." 20 ILCS 2405/3(f) (West 2014).

¶ 6                              B. The Department of Central Management Services Act

¶ 7            Section 405-105 of the Department of Central Management Services Act directs CMS to establish a program coordinating, in part, the handling of "casualty insurance exposures of the State and the departments, divisions, agencies, branches, and universities of the State." 20 ILCS 405/405-105 (West 2014). In pertinent part, subsection (10) gives CMS the power and the duty to "[e]stablish rules, procedures, and forms to be used by State agencies in the administration and payment of workers' compensation claims. For claims filed prior to July 1, 2013, [CMS] shall initially evaluate and determine the compensability of any injury that is the subject of a workers' compensation claim and provide for the administration and payment of such a claim for all State agencies." 20 ILCS 405/405-105(10) (West 2014).

¶ 8                              C. Underlying Workers' Compensation Case

¶ 9            Stephanie Yencer-Price worked in the Dailey household as a personal assistant pursuant to the Rehabilitation Act. After allegedly sustaining injuries while performing her duties as a personal assistant, Yencer-Price filed two workers' compensation claims alleging she was a State employee. CMS determined Yencer-Price was not a State employee and denied her workers' compensation claims. In making this determination, CMS relied, in part, on (1) the amendments to the Rehabilitation Act and the Public Labor Relations Act, which designated personal assistants as State employees exclusively for the purposes of collective bargaining; (2) DHS regulations designating the customer (and not the State) as the employer of the personal assistant; and (3) the Supreme Court's decision in *Harris v. Quinn*, 573 U.S. ___, 134 S. Ct. 2618 (2014). Currently, Yencer-Price has two claims pending against DHS before the Commission.

¶ 10                                          D. Complaint

¶ 11           CMS's complaint alleged it explicitly asked the Attorney General to present its determination that Yencer-Price was not a State employee in proceedings before the Commission. However, the Attorney General refused to present this argument and objected to CMS's request to choose a special assistant Attorney General to represent CMS before the Commission. The complaint alleged the Attorney General had professional, statutory, constitutional, and ethical obligations to (1) apprise the Commission of CMS's reasons for denying Yencer-Price's claims and (2) present the lack of an employer-employee relationship between the State and Yencer-Price as a defense to Yencer-Price's claims. The complaint further alleged the Attorney General's refusal to raise this defense interfered with CMS's statutory duty to administer the workers' compensation program for State employees.

¶ 12           The Attorney General filed a motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)), arguing CMS failed to set forth a legally valid cause of action. The motion to dismiss alleged (1) the Attorney General had the exclusive constitutional authority to represent the State, including its officers, employees, and agencies, when the State is the real party in interest in litigation and allowing CMS to choose private counsel would cause "chaos"; (2) the Attorney General was "vigorously defending" these workers' compensation cases; and (3) the Commission had repeatedly rejected the very argument CMS sought to raise and ruled that personal assistants are employed by the State.

¶ 13           In June 2016, the trial court granted the motion to dismiss. The court noted the potential for "chaos" if it determined the disagreement as to what argument the Attorney General should

raise constituted a conflict of interest such that special counsel should be appointed. The court observed that the unique powers and constitutional authority the Attorney General holds include the responsibility to decide what arguments, strategies, and litigation tactics to employ. Additionally, the court noted the Attorney General, in fulfilling her responsibility to litigate on behalf of the State, was raising arguments that, in her experience, were successful. The court also expressed concern that allowing CMS to choose special counsel would open the floodgates for judicial oversight of every litigation decision made by the Attorney General with which an agency disagreed. The court ruled CMS's disagreement with the Attorney General's strategy was not a conflict of interest that would justify the removal of the Attorney General from all workers' compensation cases involving personal assistants and dismissed CMS's complaint with prejudice.

¶ 14        This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16        CMS appeals, arguing the trial court erred by dismissing its complaint for failure to state a cause of action. Specifically, CMS argues (1) the court erred in its construction and application of controlling precedent and (2) CMS stated a colorable claim that personal assistants are not State employees and the Attorney General's refusal to raise that claim in workers' compensation proceedings created a disqualifying conflict of interest such that a special Attorney General should be appointed. In support of that contention, CMS argues the Attorney General's refusal to raise the lack of an employer-employee relationship was not a mere matter of trial strategy left to the discretion of the Attorney General. Rather, CMS contends the Attorney General's refusal to present this defense interfered with CMS's statutory authority to make the initial determination regarding the compensability of personal assistants' workers' compensation claims. The Attorney General contends CMS failed to allege a valid basis to remove her office from its role as the sole legal representative for the State in litigation where (1) no disqualifying conflict of interest existed, (2) Illinois law vests control over litigation for the State in the Attorney General, and (3) the Attorney General did not usurp CMS's statutory authority to make initial determinations regarding the compensability of workers' compensation claims against the State.

¶ 17                              A. Standard of Review

¶ 18        Where a complaint fails to state a claim on which relief can be granted, dismissal under section 2-615 of the Code is appropriate. *Duane v. Hardy*, 2012 IL App (3d) 110845, ¶ 10, 975 N.E.2d 1266. We accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Id.* A complaint should be dismissed "only if it is clearly apparent that no set of facts can be proven which will entitle the plaintiff to recovery." *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 333, 798 N.E.2d 724, 733 (2003). Our review is *de novo*. *Bell v. Hutsell*, 2011 IL 110724, ¶ 9, 955 N.E.2d 1099.

¶ 19                        B. Powers of the Attorney General

¶ 20        Article V, section 15, of the Illinois Constitution of 1970 provides: "The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." Ill. Const. 1970, art. V, § 15. This provision added to the prior constitutional provision, which created the office and provided the Attorney General "shall

perform such duties as may be prescribed by law." Ill. Const. 1870, art. V, § 1. See also *People ex rel. Scott v. Briceland*, 65 Ill. 2d 485, 492, 359 N.E.2d 149, 153 (1976). The supreme court held article V, section 1, of the Illinois Constitution of 1870 created the "office by the common law designation of Attorney General and thus impressed it with all its common law powers and duties." *Fergus v. Russel*, 270 Ill. 304, 342, 110 N.E. 130, 145 (1915).

¶ 21 Before further discussing the Attorney General's powers, we note that not every state attorney general enjoys the full common-law powers as in Illinois. See, *e.g.*, *State ex rel. Morrison v. Thomas*, 297 P.2d 624, 627 (Ariz. 1956) (the Arizona Supreme Court looked to statutes to determine "whether the Attorney General can represent the State without the permission of the administrative officer" because the Attorney General had no common-law power to do so). In *Santa Rita Mining Co. v. Department of Property Valuation*, 530 P.2d 360, 361 (Ariz. 1975) (*en banc*), Arizona's director of property valuation and its attorney general disagreed on whether to appeal a lower court ruling on a decision of the board of property tax appeals. The Arizona Supreme Court determined a statute granted the director of property valuation the discretion to appeal certain board decisions. *Id.* at 363. The supreme court went on to state, "It is the director's discretion which may be exercised and not the Attorney General's. The Attorney General is the attorney for the agency, no more. In the instant case[,] the Attorney General did not have the power to appeal against the wishes of his client." *Id.*

¶ 22 The same reasoning does not apply to Illinois. See, *e.g.*, *People ex rel. Scott v. Illinois Racing Board*, 54 Ill. 2d 569, 574-75, 301 N.E.2d 285, 288 (1973) (Attorney General had standing to seek administrative review of the Illinois Racing Board's licensing action, even though the Attorney General acted "as attorney and counselor to the Illinois Racing Board"). Following the adoption of the Illinois Constitution of 1970, the *Briceland* court reaffirmed *Fergus*, holding, "the Attorney General is the sole officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest, absent a contrary constitutional directive." *Briceland*, 65 Ill. 2d at 500, 359 N.E.2d at 156. "The Attorney General, as an elected representative of the citizens of this state, is responsible for evaluating the evidence and other pertinent factors to determine what action, if any, can and should properly be taken and what penalties should be sought." *Lyons v. Ryan*, 201 Ill. 2d 529, 539, 780 N.E.2d 1098, 1105 (2002). As the chief law enforcement officer of the State, the Attorney General "is afforded a broad range of discretion in the performance of public duties, including the discretion to institute proceedings in any case of purely public interest. [Citation.] The primacy of the Attorney General in that respect is not open to question." *People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, ¶ 31, 72 N.E.3d 276.

¶ 23 Being mindful of these general principles regarding the authority granted to the Attorney General, we now consider whether there exists a conflict such that the Attorney General should be enjoined from representing CMS and a special Attorney General should be appointed.

## C. Conflict of Interest

¶ 25 CMS argues the court erred in its construction and application of controlling precedent regarding the appointment of special counsel in light of a conflict—namely, *Suburban Cook County Regional Office of Education v. Cook County Board*, 282 Ill. App. 3d 560, 667 N.E.2d 1064 (1996) (hereinafter *Suburban Cook*). In turn, the Attorney General argues this case does not involve a conflict of interest within the meaning of section 6 of the Attorney General Act

(15 ILCS 205/6 (West 2014)) and, in support, points to *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 372 N.E.2d 50 (1977) (hereinafter *EPA*).

¶ 26    Before turning to these cases, however, we note section 6 of the Attorney General Act (15 ILCS 205/6 (West 2014)) provides, in pertinent part, "Whenever the attorney general is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding ***."

¶ 27                                1. *The Supreme Court's Decision in* EPA

¶ 28    We turn first to the supreme court's decision in *EPA*. *EPA* involved a pair of appeals in cases with the Environmental Protection Agency (Agency) and the Pollution Control Board (Board) as adversaries. *EPA*, 69 Ill. 2d at 397-98, 372 N.E.2d at 50-51. In one case, the Attorney General filed an appearance on behalf of the Board but withdrew following the Agency's motion to strike that appearance. *Id.* at 397, 372 N.E.2d at 51. The appellate court found the Attorney General was "interested" in the case and allowed the motion to withdraw. *Id.* In the second case, the Board requested the advice of the Attorney General regarding the appointment of counsel, and the Attorney General said the Board could represent itself at its own expense. *Id.* at 397-98, 372 N.E.2d at 51. In both instances, the Attorney General represented the Agency. *Id.* at 397, 372 N.E.2d at 50-51. The issue presented was "whether a State agency [(in this case, the Board)] may employ private counsel to represent it and have his or her fees paid by the Attorney General." *Id.* at 398, 372 N.E.2d at 51.

¶ 29    At the outset, the supreme court noted the long-standing history regarding the powers of the Attorney General and stated:

> "It is sufficient to observe that this court has consistently held, under both the 1870 and 1970 constitutions, that the Attorney General is the chief legal officer of the State; that is, he or she is 'the law officer of the people, as represented in the State government, and its only legal representative in the courts.' [Citations.] Although there has been criticism of this virtually exclusive grant of power to the Attorney General, this court has not wavered from that view, and critics recognize this is the law." *Id.* at 398-99, 372 N.E.2d at 51.

The Board impliedly conceded the Attorney General was its legal adviser, but it argued the Attorney General refused to represent the Board because it would have resulted in a conflict of interest. Because of this, the Board maintained the appellate court should have appointed private counsel based on the predecessor to section 6 of the Attorney General Act, set forth above. *Id.* at 400, 372 N.E.2d at 52.

¶ 30    The supreme court disagreed that the Attorney General was "interested" in the case such that her representation of the Board would have resulted in a conflict. *Id.* The court held, "The provision of section 6 that special counsel may be appointed where the Attorney General is interested should be limited" to two situations: (1) where the Attorney General is interested as a private individual and (2) where the Attorney General is an actual party to the action. *Id.* at 400-01, 372 N.E.2d at 52. In so holding, the court noted the Attorney General's real client is the People of the State, and her relationship with State agencies she represents is not constrained by traditional parameters of the attorney-client relationship. *Id.* at 401, 372 N.E.2d at 52-53. "[A]lthough an attorney-client relationship exists between a State agency and the

- 6 -

Attorney General, it cannot be said that the role of the Attorney General apropos of a State agency is precisely akin to the traditional role of private counsel apropos of a client." *Id.* In conclusion, the court observed:

> "The Attorney General's responsibility is not limited to serving or representing the particular interests of State agencies, including opposing State agencies, but embraces serving or representing the broader interests of the State. This responsibility will occasionally, if not frequently, include instances where State agencies are the opposing parties. It seems to us that if the Attorney General is to have the unqualified role of chief legal officer of the State, he or she must be able to direct the legal affairs of the State and its agencies. Only in this way will the Attorney General properly serve the State and the public interest. To allow the numerous State agencies the liberty to employ private counsel without the approval of the Attorney General would be to invite chaos into the area of legal representation of the State." *Id.* at 401-02, 372 N.E.2d at 53.

¶ 31                              2. *The First District's Decision in* Suburban Cook

¶ 32        In *Suburban Cook*, 282 Ill. App. 3d at 564, 667 N.E.2d at 1066, the superintendent of the Suburban Cook County Regional Office of Education sought funding for his office from the Cook County Board, but the funding request was denied. Pursuant to section 3A-15 of the School Code (105 ILCS 5/3A-15 (West 1992)), the superintendent requested the State's Attorney to file suit against the Cook County Board. *Suburban Cook*, 282 Ill. App. 3d at 564, 667 N.E.2d at 1067. The State's Attorney declined to file suit based on his belief the Cook County Board was not responsible for the funding and urged the superintendent not to hire private counsel, as the State's Attorney was the superintendent's legal representative. *Id.* Nevertheless, the superintendent hired private counsel to file suit against the Cook County Board. *Id.* The trial court denied a motion to appoint private counsel as a special State's Attorney to represent the superintendent pursuant to section 3-9008 of the Counties Code (55 ILCS 5/3-9008 (West 1992)). *Suburban Cook*, 282 Ill. App. 3d at 568, 667 N.E.2d at 1069. Instead, the court determined the superintendent "was a [S]tate officer and the [S]tate should bear the financial burden of the litigation." *Id.* Accordingly, the court appointed private counsel as a special Attorney General under section 6 of the Attorney General Act (15 ILCS 205/6 (West 1992)). *Suburban Cook*, 282 Ill. App. 3d at 568, 667 N.E.2d at 1069.

¶ 33        On appeal, the *Suburban Cook* court first determined the trial court erred in appointing private counsel as a special Attorney General in light of section 3A-15 of the School Code, which placed a special duty on the State's Attorney to represent the superintendent and removed any obligation the Attorney General had to represent him. *Id.* at 570, 667 N.E.2d at 1070. The court then identified what was, and was not, at issue on appeal as follows:

> "This case does not involve an attempt on the part of a legislative body or the judiciary to diminish the powers of the State's Attorney or to interfere with his discretion. [Citations.] Nor does it involve in a direct sense any conflict of interest on the part of the State's Attorney [citation] or his *right* to represent separate public officials in a dispute between them. [Citation.] We say it does not involve those questions in a direct sense because the State's Attorney did not represent both parties. ***
>         ***
>         What is involved here is the very troublesome question of the right to representation of an elected official when his opinion of the law applicable to his office

is in conflict with the opinion of the lawyer whose statutory duty is to represent that elected official." (Emphasis in original.) *Id.* at 570-71, 667 N.E.2d at 1071.

However, the *Suburban Cook* court went on to note the facts of the case "disclose[d] that a conflict exists between the interest of the plaintiffs [(the superintendent)] and the interest of the [Cook County] Board and that appointment of [private counsel] would remove the taint of a real and not just a perceived conflict." *Id.* at 573, 667 N.E.2d at 1073. Because of these adversarial interests, the *Suburban Cook* court sought to reconcile the supreme court's ruling in *EPA*. *Id.* at 574, 667 N.E.2d at 1073. The court noted *EPA* did not stand for the proposition that an Attorney General or a State's Attorney may *always* represent two opposing officials whom they are required to represent. *Id.* The court emphasized the fact that the Board in *EPA* hired its own private counsel and then sought fees from the Attorney General without appointment of such counsel by the court. *Id.* Finally, the *Suburban Cook* court pointed to the supreme court's observation, in *dictum*, that the appellate court had the discretion to appoint or to deny the appointment of special counsel. *Id.*

¶ 34   The appellate court ultimately ruled the "proper procedure in cases where an irreconcilable conflict arises between two officials the State's Attorney is obliged to represent would require the invocation of the court's discretion" to appoint special counsel. *Id.* at 575, 667 N.E.2d at 1074. The court observed, "That procedure would insure that the official could not arbitrarily seek representation from a private attorney, nor seek private representation to advance a frivolous legal position. If the official is able to establish a colorable claim which the State's Attorney is unwilling to support or if the State's Attorney is representing two agencies which are in conflict, the court should be able to exercise its discretion and to appoint private counsel." *Id.*

¶ 35                    3. *Application of* EPA *and* Suburban Cook

¶ 36   In the instant case, the trial court noted the potential for "chaos" if it determined the disagreement as to what argument the Attorney General should raise constituted a conflict of interest such that special counsel should be appointed. The court observed the unique powers and constitutional authority the Attorney General holds in representing the State in litigation include the responsibility to decide what arguments, strategies, and litigation tactics to employ. The court ruled CMS's disagreement with the Attorney General's strategy was not a valid basis to justify the removal of the Attorney General from all workers' compensation cases involving personal assistants. The court also found *Suburban Cook* distinguishable.

¶ 37   The present case clearly does not fall within one of the two situations the supreme court determined were disqualifying conflicts in *EPA*. The Attorney General is not individually interested in or a party to the underlying workers' compensation case, nor is the Attorney General in the position of representing opposing States agencies. Although CMS might disagree as to what argument the Attorney General makes, that disagreement is insufficient to qualify as a conflict of interest such that special counsel should be appointed. We turn now to *Suburban Cook*.

¶ 38   We find *Suburban Cook* factually distinguishable. The State's Attorney in *Suburban Cook* refused outright to file suit on behalf of the superintendent and was representing the Board. In this case, the Attorney General is *not* refusing to represent CMS before the Commission. Indeed, the Attorney General is "vigorously defending" the workers' compensation cases at issue here. In so doing, the Attorney General is refusing to raise an argument that has

repeatedly failed before the Commission. As discussed above, the Attorney General has broad discretion to conduct litigation on behalf of the State, including "evaluating the evidence and other pertinent factors to determine what action, if any, can and should properly be taken." *Lyons*, 201 Ill. 2d at 539, 780 N.E.2d at 1105. We find the Attorney General's refusal to raise a historically unsuccessful argument falls within this discretion. We note the Commission has—for at least the last 15 years—rejected the very argument CMS wants the Attorney General to make. Indeed, the Attorney General's office has been threatened with penalties and fees because its "continued denial of the employment relationship with personal assistants is unreasonable and vexatious in light of the numerous decisions so finding that relationship." *McBride v. State of Illinois, Department of Rehabilitation Services*, No. 02 W.C. 25008, 2004 WL 2832075, at *1 (Ill. Indus. Comm'n Oct. 21, 2004). The Attorney General's refusal to raise this argument does not constitute an arbitrary interference with CMS's statutory authority to make the initial determination as to the compensability of personal assistants' workers' compensation claims. CMS may continue to make the initial determinations on whatever basis it determines is appropriate. But that cannot mean the Attorney General must raise a losing argument, risk facing penalties and fees, and be denied the ability to conduct the course of litigation in these cases.

¶ 39 We acknowledge CMS's argument that it has presented a "colorable" claim that personal assistants are not State employees based on the United States Supreme Court's ruling in *Harris*, 573 U.S. ___, 134 S. Ct. 2618. However, we agree with the Attorney General that the Supreme Court found the personal assistants were not "full-fledged" State employees in the context of federal first amendment claims. The Supreme Court specifically stated its ruling was not based on State law. *Id.* at ___ n.10, 134 S. Ct. at 2635 n.10 ("Our decision rests in no way on state-law labels."). Additionally, we do not think that decision has any bearing on whether a conflict of interest exists such that the Attorney General should be disqualified in this case. We reiterate the language from *EPA*: "if the Attorney General is to have the unqualified role of chief legal officer of the State, he or she must be able to direct the legal affairs of the State and its agencies." *EPA*, 69 Ill. 2d at 401-02, 372 N.E.2d at 53. It is undisputed the Attorney General has broad discretion in representing the State in litigation where the State is the real party in interest, and her decision to refuse to raise an argument—particularly an argument which has repeatedly failed before the Commission—is within that discretion.

¶ 40                                 D. Separation of Powers
¶ 41 In their reply brief and at oral argument, defendants argued the Attorney General's refusal to raise the employer-employee relationship argument constitutes "a severe separation of powers encroachment on the [e]xecutive [b]ranch." However, this argument is not supported by citation to relevant authorities. Moreover, the Attorney General's "duty to conduct the law business of the State" is an executive branch function. *Fergus*, 270 Ill. at 342, 110 N.E. at 145. "The separation of powers doctrine applies only to powers assigned to separate branches of government." *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 479, 804 N.E.2d 546, 560 (2004). Accordingly, we find this argument unpersuasive.

¶ 42                                    III. CONCLUSION

¶ 43          For the reasons stated, we affirm the trial court's judgment.

¶ 44          Affirmed.