[Civil No. 4493. Filed April 20, 1942.]

[124 Pac. (2d) 768.]

STATE OF ARIZONA ex rel. ANA FROHMIL-
LER, State Auditor, Appellant, v. HERMAN E.
HENDRIX, CLYDA S. MARKHAM, UNITED
STATES FIDELITY & GUARANTY COM-
PANY, a Corporation, Appellees.

Mrs. Ana Frohmiller, Appellant, *in propria persona.*

Messrs. Lewkowitz & Wein, for Appellee Markham.

LOCKWOOD, C. J.—On January 25, 1940, the State of Arizona, on the relation of Ana Frohmiller, as state auditor, filed in the superior court of Maricopa county, a complaint against Herman E. Hendrix, Clyda S. Markham, and United States Fidelity & Guaranty Company, a corporation, to recover money belonging to the State of Arizona, which it was alleged had been wrongfully misappropriated by the two defendants first named. On April 1, 1940, a judgment in favor of defendants Hendrix and United States Fidelity & Guaranty Company was duly rendered. Markham answered, and the case against her came on for trial before a jury, which ultimately reported it was unable to agree on a verdict, and it was discharged. During all these proceedings, plaintiff was represented by P. H. Brooks, a member of

the state bar and the deputy state auditor. On July 31, 1941, a motion to dismiss the case without prejudice was filed, founded upon a stipulation entered into between counsel for defendant Markham and Brooks, and on August 1 an order was entered granting the motion. The next day an application for reinstatement of the case, signed by Ana Frohmiller as state auditor, was filed. Allan K. Perry, a member of the state bar, voluntarily appeared on behalf of plaintiff, but was denied the right to act as such representative, though he was permitted to argue the motion as *amicus curiae*. On October 10 an order was entered by the court reinstating the case, which later was set for trial with a jury.

The matter came on for trial on November 7, Phil J. Munch, a member of the state bar and deputy state auditor, appearing on behalf of plaintiff. Counsel for defendant Markham then presented a motion to dismiss on the ground that the State of Arizona was not properly represented, in that no one but the attorney general, or his assistants, was authorized to represent the plaintiff in the superior court. On November 8, the following order was entered:

"Order defendant's motion to dismiss action because not properly prosecuted before the court is granted,"

and the matter was brought before us on appeal therefrom.

The questions for our consideration are (a) whether, in an action of this kind, it is properly brought by the state on relation of the auditor, (b) if so, to what extent, if at all, she may appear therein *in propria persona* or by deputy, and (c) whether she may be represented in court by counsel other than the attorney general or one of his regularly appointed assistants.

■ The constitution of Arizona provides for certain elective state officers, among them being the

governor, state auditor and the attorney general. Art. 5, § 1, Const. of Arizona. The powers and duties of the governor are to a great extent set forth in the Constitution. Those of the attorney general and the auditor are in no way specified therein beyond the provision of art. 5, § 9, which reads as follows:

"The powers and duties of secretary of state, state treasurer, state auditor, attorney-general, and superintendent of public instruction shall be as prescribed by law."

We, therefore, must refer to the statutes in order to ascertain what powers and duties the legislature has conferred upon these officers. In so doing we should consider all the statutes affecting the question and so construe them together as to, if possible, give effect to all the provisions appearing therein. These sections are subdivision 6, section 4–302, referring to the auditor; and subdivision 2, section 4–502, and section 4–503, Arizona Code 1939, affecting the attorney general. They read as follows:

"*Auditing of claims—Other duties.*—The auditor shall: . . .

"6. Direct prosecutions in the name of the state, for all official delinquencies in relation to the assessment, collection, and payment of the revenue against all persons, who, by any means, become possessed of public moneys or property and fail to pay over or deliver the same, and against all debtors to the state."

"*Duties.*—The attorney-general shall: . . .

"2. Appear in the Supreme Court and prosecute or defend all causes therein to which the state, or any officer thereof in his official capacity, is a party; and when required by the governor to appear for the state or any officer thereof, and prosecute or defend in any other court any cause wherein the state is a party or is interested; . . . "

"*Legal advisor of departments.*—The attorney-general shall be the legal advisor of all departments of the state, and shall give such legal service as such

departments may require. With the exception of the industrial commission, no official, board, commission, or other agency of the state, other than the attorney-general, shall employ any attorney or make any expenditure or incur any indebtedness for legal services. The attorney-general may, when the business of the state requires, employ assistants."

The present proceeding is an attempt to collect certain public moneys which it is alleged have come into the possession of defendant Markham, and which she has failed to pay over or deliver to the state. What does subdivision 6, *supra,* declare to be the duty of the auditor in reference to such a situation? It is to "direct prosecutions in the name of the state." What is the extent of the authority given to the auditor by the words "direct prosecutions"? We have frequently said that, in construing statutes, words used therein are to be given their common meaning, unless it clearly appears that some special or technical meaning is intended by the legislature. Webster's New International Dictionary, 2nd Ed., is accepted by this court as giving the commonly understood definitions of all words in the English language. We find therein the verb "direct" is defined as "to give an order or instruction to; to instruct authoritatively; to regulate the activities or course of." There are many other definitions given, but we think these are peculiarly applicable to the word as used in the statute. As synonyms of the words "direct," we find "command, conduct, guide."

We think the words "direct prosecution" mean it is the duty of the auditor to cause to be instituted prosecutions in the name of the state, on her relation, whenever she thinks public money has come into the hands of anyone who fails to pay it over as required by law, and to direct and guide such prosecutions until they are terminated. When the state is injured, it has a right to sue for redress, but it must sue through

the instrumentality of an agent or person designated by statute or empowered by recognized principles of law to act for it. We think the auditor, considering the manifold duties of that office, is the logical person to determine whether prosecutions to recover state money should be instituted, and to cause such action to be taken on her relation, and the legislature has evidently reached the same conclusion, and stated it in subdivision 6, *supra*.

Counsel for defendant cite *State* v. *Standard Oil Co.*, 179 Ark. 280, 16 S. W. (2d) 581, as authority for a different meaning for the words "direct prosecutions." On a careful reading of the case, we think, while the statutes involved are different, its rationale rather sustains our conclusion.

 It has been accepted in the past without question in this state that one may appear and present or defend any action wherein he is plaintiff or defendant, without the assistance of a regularly licensed attorney. In many states, the bar act or some constitutional or statutory provision expressly so provides. We are not aware of any provision of the Arizona statutes or constitution which expressly covers this question. Section 32–349, Arizona Code 1939, reads as follows:

"*Only active members may practice law.*—No person shall practice law in this state subsequent to the organization meeting of the state bar unless he shall be an active member thereof in good standing as in this act defined."

But it seems to be accepted as a general principle that one who acts only for himself in legal matters is not, in the meaning of similar statutes, practicing law. Section 21–426, Arizona Code 1939, reads, in part, as follows:

"*Signing of pleadings.*—Every pleading of a party represented by an attorney shall be signed by at

least one (1) attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address. . . ."

This would seem to imply that one may appear and institute proceedings without an attorney. If this were a proceeding by the auditor in her private capacity, we think under our past practice and the statutes quoted, she would have a right to appear and not only sign pleadings but represent herself in all legal proceedings. It will be observed, however, that the action is one by the State of Arizona on her relation, and that she is acting as an agent of the real plaintiff, the state. We know of no cases in which it is held that a plaintiff or defendant may be represented in court by an agent who is not himself the plaintiff or defendant or a licensed attorney. The only case which we can find, which seems to bear upon the question, is that of *New Jersey Photo Engraving Co.* v. *Carl Schonert & Sons,* 95 N. J. Eq. 12, 122 Atl. 307. Therein the court said:

"Now a corporation is an artificial person, and therefore cannot personally appear. It acts in affairs of business by its officers and agents representing it, and may even be an executor, etc., by virtue of the statute just as a natural person can. But not every natural person can be a lawyer. A corporation acts in affairs of law through its attorneys and solicitors, and, in the nature of things, must so act. Consequently, it can only apply for an order through a solicitor as only members of the bar have audience in the courts, and corporations cannot be admitted to the bar. In Dan. Ch. Pl. & Pr. vol. 1, § 146, it is stated that, where corporations aggregate are sued in their corporate capacity, they must appear by attorney and answer under the common seal of the corporation. See, also, *Ransom* v. [*President, etc., of*] *Stonington Savings Bank,* 13 N. J. Eq. 212. They may adopt and use any seal *pro hac vice.* Id. See the form of a jurat to the answer of a corporation.

Dick. Ch. Proc. (Rev. Ed.) p. 115. In the same work in the forms of affidavits to bill, at page 17, is one by an attorney in fact. This, however, does not refer to the case of a corporation. It is the case of a complainant out of the state, and who has constituted an attorney in fact under a power of attorney executed and delivered. That only permits him to file the bill, not to appear as the advocate of the complainant; and, indeed, it could not authorize him to do the latter. . . . ''

 If this be the correct rule, and in reason we think it is, then the auditor, acting on relation of the state, could very properly sign the complaint, either by herself or deputy, but could not appear as an advocate in the further conduct of the proceedings. But, since it is not only her right but her duty to determine whether the action should be brought, and, therefore, necessarily whether it should be maintained if, in her discretion, she thinks it is in the best interest of the state, it would appear that in the absence of some definite provision to the contrary, she has the right to select some licensed attorney to handle the case in court.

 Do the sections quoted, stating the duties of the attorney general, take away the right of the auditor to secure and use the services of such counsel? Section 4-502, *supra,* has been part of our law ever since statehood; section 4-503, *supra,* was not added until the regular session of 1931 (chapter 30). We have held the powers and duties of the attorney general do not come from the common law, but are fixed solely by statute. *Shute* v. *Frohmiller,* 53 Ariz. 483, 90 Pac. (2d) 998. Before 1931 his powers, so far as material to this proceeding, were limited to (a) prosecute or defend all cases in the supreme court to which the state, or any officer thereof in his official capacity, is a party, and (b) appear for the state or

any officer thereof in any other court *when required by the governor.*

Up to 1931, therefore, there was nothing in the law requiring or, indeed, permitting the attorney general to appear in the superior court in proceedings like this unless he was so requested by the governor. His only duties in regard to state officers, aside from those set forth in subdivision 2, *supra,* were found in subdivision 5 of the same section:

"Give his opinion in writing to the legislature or either house thereof, to any state officer and to any county attorney, when required, upon any question of . law relating to their offices;"

 If there were nothing further in the law, it would appear certain that any state officer who had the authority to bring a proceeding in the name, and on behalf, of the state could employ and pay counsel a reasonable sum from the appropriation made for the maintenance of his office. In 1931, however, section 4–503, *supra,* was adopted. How did that change the law then existing? In determining the meaning and intent of the legislature, we may look back into the history of the statute, and the evils, if any, which caused its adoption. *Bank of Lowell* v. *Cox,* 35 Ariz. 403, 279 Pac. 257. For various reasons best known to themselves many state officers, by the time the legislature convened in its biennial session in 1931, had gradually adopted the habit of disregarding the opinion of the attorney general's office on many questions of law affecting their respective departments and of securing such counsel as they personally preferred and had confidence in for the conducting of much litigation in which they were involved, and paying them from the appropriations made for the conduct of their offices. This added considerably to the expenses of the state because such action, in effect, duplicated the work which, in most cases, might have been per-

formed by the attorney general's office. It was undoubtedly as a result of this situation that the legislature adopted section 4–503, *supra*. Unquestionably this had the effect of stopping the duplication of expenses theretofore existing, for no department of state from that time, except those which were especially authorized, such as the industrial commission, had the right to expend any money whatever for legal services. The construction of the section was before us in *Crane* v. *Frohmiller*, 45 Ariz. 490, 45 Pac. (2d) 955, 961, and referring thereto, we said:

"This is an explicit statement that no official, board, commission or agency of the state, with the exception of the Attorney General, is permitted to incur any indebtedness for legal services, and the latter is required to furnish any such services that may be required by any department of the state. . . .

"So far as legal services are concerned, the Attorney General is required by law to furnish them. If for any reason he feels that he is personally unable properly to represent the state in the pending litigation, the Legislature has given him unlimited power to choose any competent attorneys as assistants, . . ."

We did not, however, discuss nor determine the question as to whether any department of state could decline to accept the services of the attorney general and secure other legal advice and services, *provided there was no payment therefor from public funds.* It is argued by defendant Markham that it necessarily follows from the language of the section that it was the intent of the legislature that the state and every department thereof should always be represented in legal matters *only* by the attorney general or his assistants. The contention is a plausible one, but so to hold would be to emasculate or destroy the power given the auditor under subdivision 6, *supra,* by taking the conduct of litigation, which she is expressly

authorized to bring according to her discretion, out of her hands, and, in effect, although not in terms, giving to the attorney general the right to determine whether the litigation should be prosecuted effectively or not.

There are two words in the section under consideration, the meaning of which will determine the particular question under discussion. The first is the word "require," and the second is "employ." The first is variously defined as "to demand, to exact or to request," and, on the other hand, as "to need," while "employ" is defined as "to make use of the services of." Its synonym is given as "to hire." Webster's New International Dictionary, *supra*. The one is used to emphasize the idea of services to be rendered, while the other more directly implies wages to be paid. The two, however, are often used interchangeably. It thus appears that the meaning of the section differs in accordance with what definition we apply to the two words. In the one case, we would say that the attorney general should give legal services only when such are demanded or requested by the department involved, and that the prohibition is against securing the services upon payment of wages, while in the other case the meaning would be that the attorney general should give his services whenever the department needed services of that nature, and that the department could not secure legal services from any other person under any circumstances whatever.

Taking into consideration all the statutes involved, and particularly that portion of section 4–503, *supra,* following the word "employ" and reading "make any expenditure or incur any indebtedness for legal services," we think the legislature did not mean to prohibit any counsel other than the attorney general or his assistants from appearing for a de-

partment which was given the discretion to direct the prosecution of actions, but rather that section 4-503, *supra,* was meant to protect the treasury against duplication of salaries, and to provide a place where all officers could obtain legal advice and services *if they so required,* and that it did not go to the extent of compelling an officer expressly given discretion in regard to the prosecution of actions to follow the advice of the attorney general in regard thereto, if he did not agree with it, and preventing him from securing counsel of his own choosing *if thereby the state was put to no extra expense.*

Statutes similar to section 4-503, *supra,* were involved in the cases of *Brome* v. *Cuming County,* 31 Neb. 362, 47 N. W. 1050; *Clough* v. *Hart,* 8 Kan. 487; *Board of County Com'rs. of Logan County* v. *Jones,* 4 Okla. 341, 51 Pac. 565. A careful examination of all of these cases will show that the only point decided was that public money could not be used to pay for the services of an attorney selected by an officer or board, under whose instructions the suit was brought or maintained, so long as the law provided another public official whose duty it was to appear on behalf of the state in the prosecution or defense of the litigation. In none of these cases do we find any decision that if the suit was instituted by the proper officer, that officer might not be represented by outside counsel so long as public money was not used to pay for his services.

It not infrequently happens that one public officer may take a certain view of the law, while another may construe it in a contrary manner, and litigation may properly be commenced to determine the true construction. The attorney general obviously cannot properly represent both officers. He must choose which side he will take. If the other officer is not permitted to secure competent counsel to repre-

sent his point of view, it may be that the court will be misled into rendering a wrong judgment. Further, since the attorney general has no discretion to determine whether suits like the present one be commenced or maintained by the auditor, it would be unreasonable to hold that section 4–503, *supra,* was intended by the legislature to deny the officer, *whose discretion it was to determine whether the suit should be instituted and maintained,* the right to be represented by counsel whom she thought could and would present her view of the law, in a manner satisfactory to her, to the court. In the present case, however, it appears that the person who represented the auditor before the lower court was designated as "deputy state auditor." We have said that the auditor, except for the filing of the action, may not herself appear in the capacity of an attorney, under the rule which allows one who is a party to a suit to appear in all proceedings, notwithstanding that he is not a member of the bar, and it follows that the same rule applies to her deputy. The records of this court, however, show that the deputy state auditor was at the time a regularly qualified and licensed attorney of the bar of Arizona. Does the fact that he did not specifically state that he appeared in such capacity sustain a finding that the suit was not properly prosecuted? We think that this objection can be raised only by the auditor. If she disclaims the right of such party to represent her as an attorney, of course he may not do so, but since he is qualified so to represent her, in the absence of an objection on her part we think the question may not be raised by other parties to the action. The record shows no such objection on her part, and we must, therefore, assume it was not made.

■ In the present proceeding, therefore, since it appears the suit was properly brought by the state on the relation of the auditor, and that the party who

attempted to represent her in court was a duly qualified member of the state bar, and that she made no objection to his representing her as such, it cannot be said the action was not properly prosecuted.

The order appealed from is reversed, and the case remanded with instructions to reinstate it, and for such further proceedings as may be advisable in accordance with the views expressed herein.

McALISTER and ROSS, JJ., concur.