# In the Iowa Supreme Court

No. 24–1160

Submitted October 7, 2025—Filed December 5, 2025

**City of Davenport,**

Appellant,

vs.

**Office of Auditor of State of Iowa,**

Appellee.

In an appeal from the Iowa District Court for Scott County, Jeffrey D. Bert, judge, regarding the Auditor of State's subpoena of city records, the Auditor filed a motion on appeal objecting to the Attorney General's representation of his office and seeking to be represented by his own general counsel.

Because of the Attorney General's conflict of interest, the Auditor of State may be represented by his general counsel. **So Ordered.**

Mansfield, J., delivered the order of the court with an opinion, in which Christensen, C.J., and Oxley and McDermott, JJ., joined. McDonald, J., filed an opinion concurring in part and dissenting in part, in which May, J., joined. Waterman, J., took no part in the consideration or decision of this matter.

Richard A. Davidson and Brett R. Marshall of Lane & Waterman LLP, Davenport, for appellant.

John McCormally (argued), General Counsel to the Iowa Auditor of State, for appellee.

Brenna Bird, Attorney General; Eric H. Wessan (argued), Solicitor General; Patrick C. Valencia, Deputy Solicitor General; and William C. Admussen (until withdrawal), Assistant Solicitor General, for appellee.

**Mansfield, Justice.**

### I. Introduction.

In Iowa, the Auditor of State is a constitutional officer described in the constitution and elected by the voters of the state. Iowa Const. art. IV, § 22. Likewise, the Attorney General is a constitutional officer identified in the constitution and elected by the voters of the state. *Id.* art. V, § 12. Both have duties as provided by law. *See* Iowa Code chs. 11, 13 (2024).

Under Iowa Code chapter 11, the Auditor conducts audits of the state and local governments and related organizations. *Id.* §§ 11.2, .6. The Auditor also makes reports of those audits. *Id.* §§ 11.4, .14. In connection with an authorized audit or examination, the Auditor "shall . . . have power to issue subpoenas of all kinds, administer oaths and examine witnesses, either orally or in writing." *Id.* § 11.51. In case any witness refuses to attend or provide subpoenaed documents, books, and papers, "the auditor of state or the auditor's designee may apply to the district court . . . for the enforcement of attendance and answers to questions." *Id.* § 11.52.

The Attorney General also has duties prescribed by statute. Iowa law provides,

> 1. It shall be the duty of the attorney general, except as otherwise provided by law to:
>
> . . . .
>
> *c.* Prosecute and defend all actions and proceedings brought by or against any state officer in the officer's official capacity.

*Id.* § 13.2(1)(*c*).

The present dispute arose after the Auditor obtained district court orders in an action to enforce a subpoena. The orders determined that the Auditor was entitled to obtain attorney–client privileged materials from the subpoenaed city

as long as they were relevant. In the district court's view, Iowa law shielded only "attorney work product" from the Auditor but not other "confidential" information, including attorney–client privileged information. *See id.* § 11.41(3), (4)(*a*)(4). The city appealed these orders and devoted almost all of its appellant's brief to arguing that Iowa law did *not* authorize the Auditor to access attorney–client privileged information.

The Attorney General undertook to represent the Auditor as appellee in this appeal. The initial draft of her brief advocated for the Auditor's position that Iowa law authorizes the Auditor to obtain access to relevant attorney–client privileged information (excepting attorney work product). However, the day before that brief was due, the Attorney General advised the Auditor that she was removing that part of the brief and would refuse to argue for that position. The Attorney General explained that she disagreed with that position, that the position was unlikely to succeed, and that "the Attorney General is responsible for defending the State's prerogatives and interests" and "[t]he attorney–client privilege is vital to that."

The Auditor objected and filed his own brief through the general counsel of his office. He also moved to strike the brief filed by the Attorney General. We set the motion to strike for oral argument and asked for additional statements from the Auditor and the Attorney General.

We now conclude that the Auditor may appear on appeal through his general counsel and that the Attorney General should present her position as an amicus curiae. The Auditor and the Attorney General disagree as to the subpoena authority of the Auditor. This is not a mere disagreement over strategy, as suggested by the Attorney General. The Attorney General doesn't want the

Auditor's view of his own authority upheld on appeal. That is a conflict of interest, and it justifies the Auditor's appearance through other counsel.

In light of the Attorney General's conflict, a second issue arises. Must the Auditor obtain the approval of the executive council to be represented by his own general counsel, an employee of his office? We conclude that the better reading of the pertinent statutes does not require executive council approval where the Auditor is not retaining an outside attorney.

Accordingly, for the reasons discussed herein, we determine that the Auditor's brief as filed by his general counsel will be the appellee's brief for purposes of this appeal. However, it is important that the Attorney General's views be considered, and we order that the Attorney General may file an amicus brief within thirty days.

**II. Facts and Procedural Background.**

**A. The Auditor's Subpoena to the City of Davenport.** On December 13, 2023, the Davenport City Council held a public vote to approve the settlements of harassment claims brought by three city employees. The payments totaled approximately $1.9 million; one settlement—with the city administrator—was for $1.6 million. When the settlements became public, they generated widespread criticism. Allegations surfaced that the settlements had actually been reached before the November 2023 city elections, but that their announcement had been delayed until after the elections.

Responding to a request from an elected official, the Auditor notified the city on January 25, 2024, that he would be conducting a reaudit of the city. *See id.* § 11.6(4)(*a*)(2). The reaudit focused on the settlement payments, and in particular whether the city had complied with legal requirements and generally accepted accounting principles when spending taxpayer dollars.

The Auditor served a subpoena on the city. *See id.* § 11.51. The Auditor sought, among other things, documents pertaining to the settlement agreements and the minutes and recordings of the closed council sessions held on October 4, October 25, December 6, and December 13, 2023.

The city produced some documents, but objected to producing others on the basis of the attorney–client privilege and the attorney work product privilege. The city noted that each of the closed sessions had occurred with counsel present and that each was held "to discuss strategy with counsel in matters involving litigation." The same day that it served its objections, the city also filed a motion in the Scott County District Court to modify the subpoena. The Auditor entered an appearance through his general counsel and countered with an application for enforcement of the subpoena. Shortly thereafter, the district court scheduled a hearing. Prior to the hearing, the Attorney General also entered an appearance on behalf of the Auditor.

**B. The District Court's Orders.** Following the hearing, the district court entered its first order. The court observed that Iowa Code section 11.41 gives the Auditor "broad authority" to obtain access to documents. *See id.* § 11.41(1) ("The auditor of state, when conducting any audit or examination required or permitted by this chapter, shall at all times have access to all information, records, instrumentalities, and properties used in the performance of the audited or examined entities' statutory duties or contractual responsibilities."). The court also observed that the same section implicitly authorizes the Auditor access to documents "required by law to be kept confidential." *See id.* § 11.41(3). The court added that the legislature addressed the city's concerns by denying access to "attorney work product." *See id.* § 11.41(4)(*a*)(4). Thus, the court concluded that "when considering the Davenport City Council closed session meetings that

occurred on October 4, 2023, October 25, 2023, December 6, 2023, and December 13, 2023, it must be determined if the closed session meeting minutes and/or recordings constitute attorney work product." Accordingly, the court ordered the minutes and recordings of those closed sessions to be provided to it for an in camera review.

The city filed a motion to amend and enlarge under Iowa Rule of Civil Procedure 1.904. It urged the court to rule that "both the attorney work product and attorney–client privileged communications are exceptions to the Auditor's authority under Iowa Code chapter 11." It also asked the court—before conducting an in camera review—to clarify what factual basis the Auditor had demonstrated to support a good-faith belief that the closed-session records were relevant to his audit.

The district court entered a second order. This order made clear that chapter 11 "does grant the Auditor the right to examine attorney–client privileged communications." It added, "While Iowa Code Chapter 11 carves out exceptions to the broad access granted to the Auditor; attorney–client privileged communications are not included in the exceptions." Yet the district court agreed with the city's position in part:

> The Court finds that an evidentiary hearing is necessary for the Court to understand what information the Auditor believes to be relevant. The Court requires guidance from the Auditor on the scope of their examination and the specific written policies and procedures the Auditor contends the City violated in approving the settlements. The Court notes that this case originates from the issuance of a subpoena from which the City partly complied. In other words, the City does not challenge the propriety of the subpoena; only the scope. Therefore, the Court requires guidance from the Auditor, with input from the City, to assist the court, during its *in camera* review, in determining what the Auditor is entitled to access pursuant to Iowa Code Chapter 11.

**C. The City's Interlocutory Appeal.** The city applied for an interlocutory appeal. Our court granted the application.

The city's opening appellate brief argued almost exclusively a single point of law—namely, that the Auditor does not have the authority to review attorney–client communications as part of an audit or examination. This took up over fourteen pages of its brief. In a mere two pages, the city added another argument: that "before conducting an *in camera* review, a court should require a *prima facie* showing, supported by facts, that an exception to privilege exists." Yet this argument was essentially a corollary to the city's primary argument that the attorney–client privilege blocks the subpoena in the first place. Thus, the city's brief closed with a request that our court "reverse the District Court and rule that the Closed Sessions are protected by the attorney–client privilege and not subject to the Auditor's Subpoena."

**D. Disagreements Between the Auditor and the Attorney General Over the Auditor's Brief.** On February 18, 2025, three days before the deadline for filing the appellee's brief, the Attorney General's office shared a draft of their brief with the Auditor's general counsel to invite comments and suggestions. The Auditor's general counsel responded the next day, "I just read through this a second time, and I really like it. These are good arguments, made very well. I especially like the section on confidential information being explicitly allowed to [the Auditor]."

However, the Attorney General's office soon had a change of heart. On February 20, the Attorney General's office contacted the Auditor's general counsel to inform him that the Attorney General would not be filing that brief and would be substituting a different brief. The new brief, which was also shared with the Auditor's general counsel, omitted any argument that the Auditor can

obtain materials covered by the attorney–client privilege. In an email, the Attorney General's office explained that it viewed that argument as "high risk" and that it would be a better strategy simply to ask for "affirm[ance of] the district court's decision to set the evidentiary hearing and, if needed, in camera review." The Attorney General's office pointed out that "the Attorney General is responsible for defending the State's prerogatives and interests" and "[t]he attorney–client privilege is vital to that."

The Auditor responded,

I want to be clear that *we do not want this brief filed in our name.*

. . . This brief now argues for restrictions on the Auditor's authority with which we explicitly disagree, both as a matter of law and as public policy.

. . . [T]he root of the problem is conflict in the AG's office in its representation of the state and its representation of the Auditor's Office.

I can understand why the AG's office doesn't want to argue that the Auditor has access to attorney client privilege information—that would mean you are arguing for the possibility that we might one day ask to review your records—but at the heart of the attorney client relationship is the notion that you can't let the interests of one client trump the interests of the other.

. . . .

. . . The AG's interest in other matters is in conflict [with its duty] to provide the Auditor with unbiased legal representation.

The second brief is not acceptable to us, . . . nor are it[s] arguments reflective of the legal interests of the independent constitutional office of the Auditor.

In an effort to potentially resolve their disagreement, the Attorney General and the Auditor secured additional time from our court to file the appellee's brief. But on February 26, the Auditor's general counsel emailed the Attorney General's office and stated that he believed the parties were at an impasse. He

asked the Attorney General to withdraw from representing the Auditor on appeal. His email explained,

> The District Court ruling—which we are defending on appeal—explicitly distinguishes between attorney client communication and attorney work product. The District Court judge persuasively argued that while work product is exempted from disclosure, attorney–client communication is a separate statutory privilege not restricted from the Auditor. The District Court makes this solid and well-reasoned argument in deciding (twice) in its orders granting in-camera review.
>
> I also understand there are valid reasons the AG doesn't want to argue that the [A]uditor can access attorney client communications, even in limited circumstances. But therein lies the conflict. You are our attorney. Your duty is [to] zealously advocate for our interests. Where those interests are in conflict with the interests of your other clients, you have [a] duty to withdraw.
>
> . . . .
>
> In our previous discussions, you indicated that the AG did not think this argument is in the best interest of the State as a whole. While I recognize that position, it is in conflict with what needs to happen in this case. Given the late stage of this, I think the best course of action is for the Auditor [to] appear on its own behalf. The appropriate course of action would be for the AG to withdraw due to the conflict.

The Attorney General's office responded,

[W]e disagree with the strategy to press the second issue. Pressing that issue is high risk and low reward—a ruling against the Auditor will severely limit the scope of the power he can claim to possess when the alternative is postponing an answer to that question to another day.

> As you acknowledged in our meeting on Tuesday, the Supreme Court is almost certain to disagree that the Auditor can subpoena attorney–client privileged communications . . . .

The email from the Attorney General's office continued, "The attorney–client privilege is ancient, durable, and nearly sacrosanct in the common-law tradition. That is why we have concluded that the Auditor's broad

authority to seek confidential documents isn't broad enough to let him breach the privilege." The Attorney General's office recommended that the Auditor seek to uphold only the district court's decision to hold an evidentiary hearing. At that hearing, *other* arguments could be asserted as to why the documents should be produced. These would include that the documents are not covered by an attorney–client privilege, that the privilege has been waived, or that it has been overcome by the crime-fraud exception.

The impasse couldn't be resolved, so the parties filed dueling appellee's briefs in our court. The Attorney General's brief on behalf of the Auditor mainly argued that the appeal was not ripe. In two pages just before the end, the Attorney General's brief added that the district court did not abuse its discretion in ordering an evidentiary hearing. Such a hearing, according to the Attorney General, was an appropriate step "to resolve threshold issues that could resolve this entire dispute," such as "the relevance of the minutes and recordings."

The brief filed by the Auditor's general counsel tracked the Attorney General's brief in some respects. It too argued that the appeal was not ripe. However, on the merits, the Auditor's general counsel set forth fifteen pages of argument that Iowa Code section 11.41 authorizes the Auditor to subpoena attorney–client privileged information. The Auditor also moved to strike the Attorney General's brief and remove the Attorney General as his appellate counsel.

We ordered that the question of representation be briefed, orally argued, and submitted to the court before consideration of the merits. We appreciate the good faith and professionalism shown by all concerned. Today's filing resolves only the question of representation.

**III. Legal Analysis.**

**A. The Issues Before Us.** As noted, Iowa law provides that "[i]t shall be the duty of the attorney general, except as otherwise provided by law to . . . [p]rosecute and defend all actions and proceedings brought by or against any state officer in the officer's official capacity." Iowa Code § 13.2(1)(*c*).

Additionally, Iowa law states,

> 1. If, for any reason, the attorney general is disqualified from appearing in any action or proceeding, the executive council shall authorize the appointment of a suitable person for that purpose. There is appropriated from moneys in the general fund not otherwise appropriated an amount necessary to pay the reasonable expense for the person appointed. The department involved in the action or proceeding shall be requested to recommend a suitable person to represent the department and when the executive council concurs in the recommendation, the person recommended shall be appointed.

> 2. If the governor or a department is represented by an attorney other than the attorney general in a court proceeding as provided in this section, at the conclusion of the court proceedings, the court shall review the fees charged to the state to determine if the fees are fair and reasonable. The executive council shall not authorize reimbursement of attorney fees in excess of those determined by the court to be fair and reasonable.

*Id.* § 13.3.

The Attorney General argues that she is entitled to represent the Auditor in this appeal. She insists that her disagreements with the Auditor over the Auditor's authority to subpoena attorney–client privileged communications are merely "strategic" and not a conflict of interest. And she maintains that if her office does not represent the Auditor, the Auditor's only alternative is to go through the executive council to obtain the approval of "a suitable person." (Quoting *id.* § 13.3.)

The Auditor urges that he is an independent constitutional officer and that the Attorney General may not prevent him from asserting a claim as to his own

legal authority in court. The Auditor also contends that the Attorney General has a conflict of interest because she is refusing to defend the Auditor's position on the attorney–client privilege as upheld by the district court due to a concern about the impact of that position on other state agencies she represents. Lastly, the Auditor concedes that section 13.3 is the exclusive mechanism for appointing outside paid private counsel to represent a state agency or officer, but he argues that he may appear in court through an attorney within his own office.

**B. Our Previous Decision in *Motor Club*.** In *Motor Club of Iowa v. Department of Transportation*, 251 N.W.2d 510 (Iowa 1977) (en banc), we addressed the Attorney General's authority under Iowa Code section 13.2(3) (1975) (now codified as Iowa Code section 13.2(1)(*c*) (2024)). The department of transportation (DOT) adopted a rule establishing a sixty-five-foot length limitation for trucks in the state. *Motor Club*, 251 N.W.2d at 512. The rule was conditioned to be effective when the general assembly passed legislation (1) outlawing studded tires and (2) implementing functional classification of highways. *Id.* A suit was filed challenging the rule in court, and the trial court held the rule invalid. *Id.* The DOT appealed, but later a majority of the commissioners of the DOT voted to dismiss the appeal and abide by the decision of the trial court. *Id.* at 513. The Attorney General, representing the DOT, declined to dismiss the appeal. *Id.* We held that the Attorney General "was obligated to submit to the direction of the DOT and dismiss their appeal." *Id.* at 516.

We explained,

> Nothing in § 13.2(3) indicates that when the attorney general appears, as he did in this case, as counsel for a department of state government his relationship with that department differs in any way from that which ordinarily exists between attorney and client. Far from imposing the will of the attorney general on a branch of

> government we believe § 13.2(3) merely enables state officers to utilize the services of the attorney general.

*Id.* at 514. We went on, "An attorney general should not seek to perform his duty to represent a department of state government where the goals of the department conflict with what the attorney general believes is the state interest." *Id.* at 515.

We also noted that the disagreement between the Attorney General and the DOT stemmed from differing views on the conditions attached to the rule. *Id.* To the DOT, implementing the conditions may have been more important than increasing the length limit of trucks. *Id.* Yet the Attorney General sought to have the conditions declared ultra vires but separable from the length limitation. *Id.*

We observed that the Attorney General "claims the right to present or not present various issues, arguments and considerations." *Id.* We disagreed:

> In our society and under our system of law the nature, scope, indeed the very existence of all rights and obligations turn on what would be decreed if those involved went to court. Governmental departments and agencies, in common with individuals, must ultimately resort to the courts and must submit to the court's decrees to effectuate their acts or to be made to comply with the lawful acts of others. Access to the courts gives life to the affairs of governmental departments and agencies. For government to properly function that access must be unimpeded.

*Id.* at 516.

The Attorney General points out that *Motor Club* dealt with whether the Attorney General had to follow an agency's instruction to *dismiss* an appeal. This case involves the Attorney General's refusal to make an appellate argument. Still, we believe the rationale and reasoning of *Motor Club* support the Auditor's position here. The Auditor's access to our court to assert the scope of his authority should be "unimpeded." *Id.* at 516.

**C. The Conflict of Interest Here.** In any event, the Attorney General's duty to represent the Auditor ceases when the law provides otherwise. *See* Iowa

Code § 13.2(1) (2024) ("[E]xcept as otherwise provided by law . . . ."). One such circumstance is when the Attorney General has a conflict of interest under the Iowa Rules of Professional Conduct. According to rule 32:1.7(a)(2), a lawyer shall not represent a client when "there is a significant risk that the representation of [that client] will be materially limited by the lawyer's responsibilities to another client." Iowa R. of Prof'l Conduct 32:1.7(a)(2). If a conflict arises, the Attorney General has an obligation to withdraw.[1]

We believe that a conflict exists here. The Auditor wants this court to affirm the district court's ruling that chapter 11 enables the Auditor to view attorney–client privileged communications when relevant. Such a decision could set a precedent that applies not only to the City of Davenport but also to state agencies. The Attorney General does not agree that chapter 11 allows the Auditor access to attorney–client privileged communications. Thus, she declines to pursue affirmance on this ground.

The Attorney General characterizes her refusal to make this argument as merely "strategic," but we respectfully disagree. The Attorney General contends that other arguments would have better odds of success. Yet even accepting the Attorney General's premise, she could make the Auditor's preferred argument *in addition to* those other arguments. The brief she has filed contains 6,215 words; the word limit is 13,000 words. Iowa R. App. P. 6.903(1)(*i*)(1).

The Attorney General also argues that an affirmance is an affirmance, and it does not matter on what ground the district court order might be upheld. But an affirmance that upholds the district court's attorney–client privilege ruling would be different from the narrower affirmance sought by the Attorney General

---

[1] Iowa law clearly contemplates circumstances when the Attorney General would be "disqualified" from representing a state officer. Iowa Code § 13.3(1).

that would only sustain the district court's decision to hold an evidentiary hearing. Such an affirmance would leave other issues (including privilege) to be determined later.

It is also unusual for an appellee not to respond to the appellant's main argument on appeal—as the Attorney General proposes to do. This leaves the appellate court without input from one side on that argument.

After a careful review of the file, we have concluded that the Attorney General does not wish to advocate for the Auditor's position with respect to attorney–client privileged communications because she believes it would be disadvantageous to the state as a whole. As the Attorney General's office stated in an email to the Auditor's general counsel, "We understand that you prefer the earlier draft [brief] that made the more aggressive argument—but the Attorney General is responsible for defending the State's prerogatives and interests. The attorney–client privilege is vital to that." Similarly, in her briefing to this court on the representation issue, the Attorney General has argued that the Auditor's position on attorney–client privilege would be inconsistent with "the State's position on attorney–client privilege in litigation that it is involved with on behalf of many similarly protected clients." The Attorney General may be taking a reasonable view of the state's legal landscape. At the same time, though, it is a conflict: the Attorney General's obligations to represent the Auditor in this appeal are "materially limited" by her responsibilities to other state agencies.[2] Iowa R. of Prof'l Conduct 32:1.7(a)(2).

---

[2]The Attorney General notes that our Rules of Professional Conduct recognize that government lawyers may have different responsibilities from other lawyers "[u]nder various legal provisions." (Quoting Iowa R. of Prof'l Conduct pmbl., para. [18] (alteration in original).) But she cites no law that would obviate the specific conflict at issue here, other than her general duty to prosecute and defend a state officer. *See* Iowa Code § 13.2(1)(*c*). As already noted, that duty is subject to the qualification, "except as otherwise provided by law." *Id.* § 13.2(1).

The Attorney General insists that she can never have a conflict when representing a state officer in their official capacity. In other words, according to the Attorney General, her assessment of the state's overall interests determines what arguments are raised. But that is contrary to what we said in *Motor Club*. *See* 251 N.W.2d at 515 ("An attorney general should not seek to perform his duty to represent a department of state government where the goals of the department conflict with what the attorney general believes is the state interest."). And it is unrealistic here. The Auditor is an independent constitutional officer whose duties include auditing state officers and departments. *See* Iowa Code § 11.2(1). Thus, Iowa law envisions that the interests of state officers and departments may come into conflict with the interests of the Auditor.

*Motor Club* also coincides with authority from other states. In *Koschkee v. Evers*, 913 N.W.2d 878, 881–83 (Wis. 2018), the Wisconsin Supreme Court held that when a difference of opinion on the central issue in a case arose between the Governor and the superintendent of public instruction, on the one hand, and the department of justice, on the other, the former were entitled to their own counsel. The court explained,

> We reach this conclusion because we are concerned about the implications of DOJ's argument. First, accepting DOJ's argument would foist upon Evers and DPI an attorney they do not want (and have discharged), taking a position with which they do not agree. This could have ethical implications for DOJ attorneys. Second, accepting DOJ's argument would give the attorney general breathtaking power. It would potentially make the attorney general a gatekeeper for legal positions taken by constitutional officers, such as the governor or justices of this court sued in their official capacity. DOJ's position would not allow a constitutional officer to take a litigation position contrary to the position of the attorney general. We decline to adopt this view.

*Id.* at 883 (footnotes omitted); *see also People ex rel. Deukmejian v. Brown*, 624 P.2d 1206, 1209 (Cal. 1981) (en banc) ("We have acknowledged 'the Attorney

General's dual role as representative of a state agency and guardian of the public interest.' The Legislature has impliedly recognized that a conflict might arise because of that duality by giving the Attorney General the right to withdraw from representation of his statutory clients and to permit them to engage private counsel." (quoting *D'Amico v. Bd. of Med. Exam'rs*, 520 P.2d 10, 21 (Cal. 1974) (en banc))); *Haw. Elec. Light Co. v. Dep't of Land & Nat. Res.*, 75 P.3d 160, 167 n.16 (Haw. 2003) ("[I]t is the duty of the Attorney General to zealously advocate the public policy positions of her client in pleadings, in negotiations, and in the courtroom and to avoid even the appearance of impropriety by appearing to be in conflict with the desires of her client." (quoting *Chun v. Bd. of Trs. of the Emps.' Ret. Sys.*, 952 P.2d 1215, 1237–38 (Haw. 1998))); *Pub. Util. Comm'n v. Cofer*, 754 S.W.2d 121, 125 (Tex. 1988) ("[A] statute authorizing the Attorney General to represent a state agency does not close either the mouth of the agency or the ears of the courts, when there are complaints that the Attorney General or his assistants are not in fact fulfilling their duty to *represent* the agency. We emphasize that when a statute confers a right upon the Attorney General to represent an agency, it imposes a corollary duty, and the agency has every right to expect the same diligent and faithful representation as any other 'client.' "); *Goldmark v. McKenna*, 259 P.3d 1095, 1100–01 (Wash. 2011) (en banc) ("[T]he attorney general would have us place his own concept of the 'public interest' above the duty to represent state officers. The statutory duties identified do not support this argument."); *Manchin v. Browning*, 296 S.E.2d 909, 919–20 (W. Va. 1982) ("A problem arises, however, when, as here, the policy advocated by the state officer conflicts with what the Attorney General perceives to be the interest of the state. The [Attorney General] asserts that when such a conflict arises, the Attorney General's duty to represent the interests of the state takes preeminence

over the interests the state officer seeks to advocate. After all, he argues, any suit brought against a state officer is, in effect, a suit against the state and the interests of the public must predominate. We cannot agree with the Attorney General's characterization of his powers and duties with respect to suits against state officials. . . . The Attorney General's role in this capacity is not to make public policy in his own right on behalf of the state. It is presumed, in the absence of a contrary showing, that the officer made a party to the suit has, in the performance of his official duties, acted in contemplation of the constitution and in the best interests of the state. The Attorney General's role and duty is to exercise his skill as the state's chief lawyer to zealously advocate and defend the policy position of the officer or agency in the litigation."), *overruled on other grounds by, State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625 (W. Va. 2013).[3]

**D. Is Executive Council Approval Needed for an Employee of the Auditor's Office to Represent the Auditor?** Finally, the Attorney General contends that if she is disqualified, the Auditor must obtain executive council approval for any alternative counsel. The Attorney General relies on the first sentence of Iowa Code section 13.3(1), which provides, "If, for any reason, the attorney general is disqualified from appearing in any action or proceeding, the

---

[3]We are not saying that a merely strategic disagreement would be grounds for disqualifying the Attorney General. In *Hoffman v. Madigan*, the Illinois Appellate Court held that a state agency was not entitled to disqualify that state's attorney general from handling a workers' compensation matter merely because the attorney general declined to assert that a personal assistant compensated by the state was not a state employee. 80 N.E.3d 105, 113 (Ill. App. Ct. 2017). The court noted that this specific argument had been rejected "for at least the last 15 years" and the "the Attorney General's office has been threatened with penalties and fees" for continuing to assert it. *Id.* The court concluded that the attorney general's refusal to make this argument fell within her "discretion." *Id.* Our case is different. The Attorney General's concern is not that the argument the Auditor wants to make is so frivolous as to be sanctionable, but that it may be successful.

executive council shall authorize the appointment of a suitable person for that purpose."

But we do not consider statutory language piecemeal. *Doe v. State*, 943 N.W.2d 608, 613 (Iowa 2020) ("[W]e read statutes as a whole rather than looking at words and phrases in isolation." (alteration in original) (quoting *Iowa Ins. Inst. v. Core Grp. of the Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015))). When we turn to the next sentence of section 13.3(1), we see that it states, "There is appropriated from moneys in the general fund not otherwise appropriated an amount necessary to pay the reasonable expense for the person appointed." Iowa Code § 13.3(1). And section 13.3(2) goes on to say, "If the governor or a department is represented by an attorney other than the attorney general in a court proceeding as provided in this section, at the conclusion of the court proceedings, the court shall review the fees charged to the state to determine if the fees are fair and reasonable." *Id.* § 13.3(2). Further, section 13.7(1) provides that "[a] department, agency, or other state governmental entity shall not contract for legal services to be provided by a private attorney unless authorized by the executive council under this section or section 13.3." *Id.* § 13.7(1).

Taken together, we read these provisions as requiring a state officer to go through the executive council before obtaining the services of a *paid outside attorney* in the event of an Attorney General conflict of interest. "Person" should have the same meaning in the first sentence of section 13.3(1) as it has in the rest of the statute. *See State v. Paye*, 865 N.W.2d 1, 7 (Iowa 2015) ("When the same term appears multiple times in the same statute, it should have the same meaning each time."). In other words, the person whose appointment requires executive council approval is an individual whose expense would need to be "appropriated from moneys in the general fund." Iowa Code § 13.3(1).

Section 13.7(1) reinforces this point. It prohibits a state department from obtaining the services of "a private attorney" without executive council approval. *Id.* § 13.7(1). But tellingly, it does not prohibit the state department from utilizing an in-house attorney. *See Chandler v. Iowa Dep't of Corr.,* 17 N.W.3d 645, 648 (Iowa 2025) ("A statute's meaning 'is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned.' " (quoting *Roberts v. Roberts,* 6 N.W.3d 730, 738 (Iowa 2024))).

Thus, section 13.1(1) serves two important goals. It protects the state officer or agency by assuring them that they will be able to get outside counsel when needed due to the Attorney General's unavailability. And it protects the public fisc through prior executive council approval of such outside counsel.

The partial dissent has a different view of these statutory provisions; we believe it is an incorrect one. In the first place, the partial dissent fails to read the statute as a whole. It disregards the first sentence of section 13.7(1), which prohibits contracting for services to be provided by private attorneys except as provided in section 13.3 or section 13.7, while not prohibiting the use of in-house attorneys. *See* Iowa Code § 13.7(1). Also, the partial dissent overlooks what section 13.3(1) actually says: section 13.3(1) requires the executive council to "authorize the appointment of a suitable person" and appropriates "an amount necessary to pay the reasonable expense for the person appointed." Iowa Code § 13.3(1). But nowhere does it require the Auditor to go before the executive council if he doesn't need an authorization for such a person because his own in-house counsel is available at no cost to the state. Again, section 13.7(1) only prohibits the use of a "private attorney" without going through the executive council. *Id.* § 13.7(1).

According to the partial dissent, its reading of the statute is superior because it enables the executive council to exercise quality control over counsel, *including in-house counsel*. Under its reading, the executive council gets to determine whether *any* counsel representing a state agency or officer has "sufficient training, experience, and gravitas." We are skeptical of this reading. Chapter 7D of the Iowa Code makes clear that the executive council's role is primarily one of financial supervision. *See, e.g., id.* §§ 7D.8–.10. The executive council's members consist of the Governor, Secretary of State, Auditor of State, Treasurer of State, and Secretary of Agriculture. *Id.* § 7D.1(1). No one else can act on their behalf. *Id.* § 7D.1(2). Although the present Auditor happens to be an attorney, these officers would not necessarily have information about the qualifications of attorneys. We presume, and we think Iowa law presumes, that the in-house attorneys employed within Iowa state government already have sufficient training, experience, and gravitas to appear in court when the Attorney General has a conflict.

It is also noteworthy that in 2021, the Auditor appeared in this court through his general counsel without obtaining executive council approval. *See Sand v. Doe*, 959 N.W.2d 99 (Iowa 2021). That case also involved a conflict: the Auditor was subpoenaing a state institution represented by the Attorney General. *Id.* at 101.

The Attorney General tries to downplay the significance of this prior in-house representation. She explains that the then-Attorney General "*allowed* the Auditor to argue on his own behalf." But the point is: the executive council didn't have to approve the appearance.

The state public defender's office has also appeared in recent appeals through in-house counsel. *See, e.g., State Pub. Def. v. Amaya*, 977 N.W.2d 22

(Iowa 2022); *State Pub. Def. v. Iowa Dist. Ct.*, 886 N.W.2d 595 (Iowa 2016). To our knowledge, this also occurred without executive council approval.[4] So, historic practice is consistent with our interpretation of sections 13.3 and 13.7.[5]

The partial dissent makes much of the fact that the executive council, with the Auditor abstaining, voted to approve the appearance of the Auditor's general counsel *in this matter*—i.e., the question of who gets to represent the Auditor. However, the Attorney General's office requested this approval after the present controversy arose. The approval came shortly before we heard oral argument. We give relatively little weight to positions taken in litigation that do not conform to past practice. In fact, the Auditor's general counsel first entered an appearance in this case in the district court in February 2024. No one apparently thought executive council approval was needed at that time.

In addition, although state laws in this area appear to be as varied as state flags and state birds, we have found one pertinent out-of-state case. In *State ex rel. Frohmiller v. Hendrix*, 124 P.2d 768, 770 (Ariz. 1942), the state auditor filed a complaint to recover misappropriated state funds. During the proceedings, the auditor was represented by the deputy state auditor, a licensed attorney. *Id.* The trial court dismissed the case on the ground that no one other than the attorney general was authorized to represent the auditor in court. *Id.* Arizona law at the time provided that "no official, board, commission, or other agency of the state, other than the attorney-general, shall employ any attorney or make any

---

[4]In *State Public Defender v. Amaya*, the Attorney General participated as an amicus. 977 N.W.2d at 27.

During oral argument, a suggestion was made that the state public defender's office has independent authority to appear in court through in-house counsel. We have been unable to find any such authority in the Iowa Code. *See* Iowa Code ch. 13B.

[5]Executive council minutes are available at https://state-treasury-ia.municodemeetings.com/.

expenditure or incur any indebtedness for legal services." *Id.* at 771 (quoting Ariz. Rev. Stat. § 4–503 (1939)). Still, the Arizona Supreme Court reversed the trial court, reasoning that "the legislature did not mean to prohibit any counsel other than the attorney general or his assistants from appearing for a department which was given the discretion to direct the prosecution of actions." *Id.* at 774. Rather, the law "was meant to protect the treasury against duplication of salaries." *Id.* That is, the auditor was not prevented "from securing counsel of [her] own choosing if thereby the state was put to no extra expense." *Id.* *Frohmiller*'s reading of the Arizona statute supports our view that Iowa Code section 13.3(1) is meant to restrict the use of outside paid counsel, not in-house counsel, when the attorney general has a conflict. *See also State ex rel. Howard v. Okla. Corp. Comm'n*, 614 P.2d 45, 50–51 (Okla. 1980) (holding that, where a public body's legal view differed from the attorney general's, the body was entitled to be represented by its own in-house counsel, and attorney general may appear ex officio); *Koschkee*, 913 N.W.2d at 881–83 (permitting state officer to be represented by his office's in-house counsel over objection of state attorney general). We conclude that the Auditor is not required to obtain executive council approval before having his own general counsel represent him in court in the event that the Attorney General has a conflict.

* * *

While we hold that the Auditor may proceed on appeal represented by his own general counsel, we sound some notes of caution. Today's case involves the Auditor, an independently elected constitutional officer. The Auditor wants to argue for affirmance of the district court's view of the Auditor's legal authority, and the Attorney General does not want to do so in part because of legitimate concerns about the impact such a decision would have on other state officers

and agencies. That's a conflict. We do not foreshadow how we would decide other cases presenting other circumstances. We also do not foreshadow our views on the merits of the appeal, which we have yet to hear, let alone decide.

**IV. Conclusion.**

For the reasons stated, we order that the Auditor may proceed in this appeal represented by his general counsel, and that the Attorney General may file an amicus brief within thirty days of today's date.

**So Ordered.**

Christensen, C.J., and Oxley and McDermott, JJ., join this opinion. McDonald, J., files an opinion concurring in part and dissenting in part, in which May, J., joins. Waterman, J., takes no part.

**McDonald, Justice (concurring in part and dissenting in part).**

I agree with the court's conclusion that the attorney general has a conflict of interest in this case and that the auditor of state may be represented by substitute counsel as provided for in Iowa Code section 13.3 (2024). I respectfully dissent from the court's conclusion that the executive council need not approve the appointment of substitute counsel for the auditor merely because the auditor found a person willing to serve as substitute counsel without incurring a fee. The better interpretation of the statute is that Iowa Code section 13.3 requires the executive council to approve the appointment of all substitute counsel before the appointment is final without regard to whether substitute counsel charges a fee.

The state has an interest in determining who represents state officers sued in their official capacities. The general assembly determined that person shall typically be the attorney general, who "shall . . . [p]rosecute and defend all actions and proceedings brought by or against any state officer in the officer's official capacity." *Id.* § 13.2(1)(*c*). The Code provides two exceptions to this general rule. The first is where the attorney general is disqualified due to a conflict of interest. *Id.* § 13.3(1). The second is when the attorney general determines the department of justice cannot undertake the representation. *Id.* § 13.7(1). Only the disqualification statute—section 13.3—is at issue here.

All questions of statutory interpretation begin with the language of the statute at issue. *Rottinghaus v. Lincoln Sav. Bank* (*In re Est. of Franken*), 944 N.W.2d 853, 859 (Iowa 2020) (stating statutory analysis begins with the text of the statute). The court's task is to determine the fair and ordinary meaning of the statute. *Id.* If the text of the statute is plain and its meaning clear, the court

is required to apply the statute as written without resorting to rules of statutory construction. *Id.* As relevant here, section 13.3 provides:

> If, for any reason, the attorney general is disqualified from appearing in any action or proceeding, the executive council shall authorize the appointment of a suitable person for that purpose. There is appropriated from moneys in the general fund not otherwise appropriated an amount necessary to pay the reasonable expense for the person appointed. The department involved in the action or proceeding shall be requested to recommend a suitable person to represent the department and when the executive council concurs in the recommendation, the person recommended shall be appointed.

Iowa Code § 13.3(1).

The statute plainly requires the executive council (not the affected state officer) to approve all appointments of substitute counsel. *Id.* Section 13.3(1) provides that when the attorney general is disqualified from representing a state officer, "the executive council shall authorize the appointment of a suitable person for that purpose." *Id.* The state officer's only role in this process is to "recommend a suitable person" to the executive council, but the recommendation is not binding. *Id.* "[W]hen the executive council concurs in the recommendation, the person recommended shall be appointed." *Id.* Under the statute there is no appointment of substitute counsel until the executive council concurs in the recommendation, i.e., "authorize[s] the appointment of a suitable person." *Id.*

The court's interpretation of the statute is wholly at odds with the statutory text. The statute states the executive council "shall authorize the appointment of a suitable person," but the court concludes the state officer shall authorize the appointment of a suitable person. *Id.* The statute provides the state officer shall "recommend a suitable person" to the executive council, but the court concludes the state officer actually appoints a suitable person. *Id.* The statute

provides the substitute counsel "shall be appointed" only "when the executive council concurs in the [state officer's] recommendation," but the court concludes substitute counsel shall be appointed when the state officer selects substitute counsel. *Id.*

The court justifies its contratextual interpretation of the statute on the ground that the appointment provisions of the statute are implicated only when substitute counsel will charge a fee for undertaking the representation. To reach that conclusion, the court notes a provision in the statute relates to the appropriation of funds to pay the reasonable expenses of substitute counsel: "There is appropriated from moneys in the general fund not otherwise appropriated an amount necessary to pay the reasonable expense for the person appointed." *Id.* In the court's view, when substitute counsel is a government lawyer who will charge no fee (or perhaps someone willing to undertake the representation pro bono), then there is no need for the executive council to be involved in the selection of substitute counsel.

I disagree with the court's construction of the text—it contravenes the general rule that "[w]hen interpreting the meaning of the statute, [the court is to] give effect to all the words in the statute unless no other construction is reasonably possible." *Cox v. Iowa Dep't of Hum. Servs.*, 920 N.W.2d 545, 553 (Iowa 2018) (quoting *Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 193 (Iowa 2011)). The court's construction of the statute gives no effect to almost all of the words in the statute except the provision relating to the appropriation of funds. The court's failure to adhere to this basic rule of statutory interpretation operates the statute in reverse. The court concludes the contingency—the need to pay private counsel—triggers the recommendation and appointment provisions of the statute. In reality, the contingency—the need to

pay private counsel—is triggered only after the recommendation and appointment process mandated by statute results in the appointment of private counsel.

There is an interpretation of the statute, however, that gives effect to all of the words in the statute: the provision for the appropriation of funds is a contingent provision appropriating money for substitute counsel in the event the suitable person recommended by the state officer and approved by the executive council is a private attorney requiring compensation; conversely, when substitute counsel does not require the payment of a fee, then the appropriation provision is inapplicable. *See Den Hartog Indus. v. Dungan*, 26 N.W.3d 377, 382–83 (Iowa 2025) (interpreting a four-sentence provision of a workers' compensation statute, concluding that one of the sentences was contingent and was not implicated by the facts of the case, and concluding that the remainder of the statute should be applied where the contingent provision was not implicated).

The court's construction of the statute also takes an unduly narrow view of the state's interests, as represented by the executive council, protected in the statute. In the court's view, the state and executive council's only interest in the selection of substitute counsel is financial. When substitute counsel does not charge a fee, then the state and the executive council have no interest and need not be involved in the selection process. The court is incorrect in two respects.

First, the statute explicitly protects another interest: making sure that substitute counsel is a "suitable person" to represent the state and the state's interest in any legal proceeding. Iowa Code § 13.3(1). This goes beyond mere financial considerations. It is up to the state, as represented by the executive council of the state, to determine that substitute counsel has sufficient training,

experience, and gravitas to be a suitable person to represent the state and its officers in court. The executive council may also want to consider whether a direct subordinate of the client would have sufficient independence to be a suitable person to prosecute or defend the case with appropriate consideration for the institutional interests of the state. This is the executive council's interpretation of the statute, as it believes it has the responsibility to "[a]ppoint legal counsel and special counsel." Off. of Governor Kim Reynolds, *Executive Council of Iowa,* https://governor.iowa.gov/exec-council [https://perma.cc/Y897-HRXJ] (last visited Dec. 2, 2025). And that is precisely what the executive council did in this case, with four members of the council authorizing the appointment of John McCormally to represent the auditor on appeal, limited to the representation issue, and the auditor abstaining. Meeting Minutes, Exec. Council of Iowa (Sept. 2, 2025).

The consideration regarding suitability may not carry much weight in this case because the conflict of interest is a conflict arising out of the attorney general's unwillingness to advocate for the issue advanced by the auditor. However, not all conflicts are of this sort. For example, in *Buechele v. Ray*, a state representative was sued for slander. 219 N.W.2d 679, 680 (Iowa 1974). The attorney general was a potential witness in the case and thus had a conflict of interest in undertaking the representation. *Id.* In that type of conflict, the executive council may want to ensure the person appointed is a suitable person to advance the institutional interests of the state, as determined by the executive council.

Second, the suitability of substitute counsel does directly implicate the financial interests of the state. The quality, or suitability, of substitute counsel is directly related to the successful resolution of litigation seeking money

damages against the state. The choice of suitable counsel to defend against such claims to avoid monetary judgments or minimize the amount of any monetary judgments or settlements directly impacts the state fisc, *see, e.g.*, *Halbur v. Larson*, 14 N.W.3d 363, 370, 376 (Iowa 2024) (affirming a $351,000 jury verdict awarded to a former state employee), which the court concedes is within the general responsibility of the executive council.

An additional consideration militates against the court's interpretation of the statute. When the legislature wants to provide a government official with the authority to hire or appoint counsel to defend the state's interests without executive council approval, it has explicitly conferred that authority. *See, e.g.*, Iowa Code §§ 7.3 (providing the Governor may employ additional counsel to protect the interests of the state in any suit brought by a state officer), .5 (providing the Governor may employ legal counsel "on behalf of any county, city or other municipality of this state or for and on behalf of any officer thereof or contractor therewith, whenever any such county, city or other municipality or officer or contractor is a party to any action or proceeding in any court wherein is involved the validity of any alleged patent on any matter or thing entering into highway, bridge, or culvert construction, or on any parts thereof"); *id.* § 29A.51 (providing the attorney general may appoint "any judge advocate on duty with those troops" to defend the interests of a member of the military forces called into state active duty); *id.* § 99B.6 (allowing the attorney general to request a county attorney to prosecute any violation of chapter 99B). We can infer from these statutes the legislature has not authorized the officer to appoint counsel without executive council approval in the case of disqualification.

In the end, the legislature determines who represents state officers sued in their official capacities. The legislature has determined the attorney general is

that person. In the event the attorney general is disqualified from undertaking the representation, the legislature has determined that the executive council "shall authorize the appointment of a suitable person." *Id.* § 13.3(1). The state officer plays some role in this process. The state officer can "recommend a suitable person" to the executive council for consideration. *Id.* Only after the executive council "concurs in the recommendation" is the person appointed. *Id.* The court divests the executive council of its statutory authority to authorize the appointment of a suitable person and instead transfers that authority to the auditor of state. That is contrary to the legislature's directive as expressed in section 13.3(1). I thus concur in part and dissent in part.

May, J., joins this concurrence in part and dissent in part.